UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
:
GERMAINE WARE, :
: CASE NO. 1:12-CV-01920
        Plaintiff, :
vs. : OPINION & ORDER
: [Resolving Docs. No. 13; 14; 15]
JOHN SANDERSON, :
:
        Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On January 3, 2013, Defendant Officer John Sanderson moved this Court for summary judgment.[1] Plaintiff Germaine Ware opposed the motion,[2] and Sanderson replied.[3] For the reasons below, the Court **DENIES IN PART** and **GRANTS IN PART** Sanderson's motion.

**I. Background**

Ware sued Officer Sanderson for damages arising out of Sanderson's June 10, 2010, shooting of Ware. Specifically, Ware makes: (1) claims under 42 U.S.C. § 1983 for false arrest and excessive force; (2) claims under the Ohio Constitution, Article I, § 10 and Ohio law for false arrest and excessive force; (3) a claim under § 1983 for retaliation; and (4) a claim under Ohio law for malicious prosecution.

---

[1] [Doc. 13.]
[2] [Doc. 14.]
[3] [Doc. 15.]

Case No. 1:12-CV-01920
Gwin, J.

*A. Undisputed Facts*

On June 10, 2010, Sanderson, and his partner Officer Robert Alford, Jr., were working as Cleveland patrol officers on the midnight shift.[4] Around 2 a.m., Sanderson and Alford received a dispatch that a suspect was making threats and breaking windows outside a residence at 13214 Glenside Road in Cleveland, Ohio.[5] The dispatcher told the officers the suspect was Jarell Starks.[6] The dispatcher also reported that a white vehicle was parked outside the residence.[7]

Upon arriving at the Glenside Road location, Sanderson and Alford observed a man fitting Starks's description standing a few feet from a white Chevrolet Impala.[8] Sanderson also noticed two passengers inside the Impala: one seated in the front passenger seat (later identified as Ware) and the other seated in the rear passenger-side seat (later identified as Marion Bennett).[9] Sanderson parked his police cruiser about ten to fifteen feet behind the Impala, and exiting the vehicle, the officers ordered Starks to approach them.[10] Starks complied—than the officers ordered him to place his hands on the hood of their cruiser for a pat down.[11] Sanderson says that Starks complied "with some resistance," and the officers finished their pat down after handcuffing Starks.[12]

Ware and Sanderson disagree about what happened next.

*B. Disputed Facts*

---

[4] [Doc. 13 at 8.]
[5] [Docs. 13 at 9; 14 at 7; 14-1 at 5.]
[6] [Doc. 14-1 at 5.]
[7] [Docs. 14-1 at 5; 13 at 9.]
[8] [Doc. 13 at 9; 14 at 7.]
[9] [Doc. 13-3 at 8.]
[10] [Doc. 13 at 9; 14 at 8.]
[11] [Doc. 13-3 at 10.]
[12] [Doc. 13 at 9.]

Case No. 1:12-CV-01920
Gwin, J.

Ware says that the officers placed Starks in the back of their cruiser, and Sanderson approached the Impala after he heard it start.[13] Then, Ware says, Sanderson approached the driver's side window, pointed his gun at Ware, put the gun through the window, and fired it—before the Impala moved.[14] The bullet struck Ware, and at that point Ware says, he drove away from the scene.[15] Ware says that Sanderson did not align himself in the "A post" position,[16] and he says, the Impala never touched Sanderson.[17]

In contrast, Sanderson says he was concerned about the safety of the scene, and thus, began to approach the Impala.[18] Then as he approached the driver's side door, he says he heard the Impala start, which caused him to draw his gun and align himself in the "A post" position.[19] Sanderson says he thought Ware was reaching for something.[20] He says he shouted for Ware to stop and turn the Impala off, but Ware did not comply.[21] Instead Sanderson says, Ware revved the engine, put the car in gear, turned the steering wheel to the left, and began to pull away.[22] Sanderson says he felt the car push against him, and at that point, he fired his gun.[23] According to Sanderson, he only fired the gun after the car had begun to pull away.[24]

---

[13] [Doc. 14 at 8.]
[14] [*Id.*]
[15] [*Id.*]
[16] [*Id.*] According to Sanderson, the "A post" position is located "where the front fender would meet the driver's side door hinge." [Doc. 13-2 at 21.]
[17] [Doc. 14 at 8.] Other witnesses have said that Sanderson fired his gun before the car began moving. [Docs. 14-2 at 516; 14-3 at 3.]
[18] [Doc. 13 at 10.]
[19] [*Id.*]
[20] [*Id.*]
[21] [*Id.*]
[22] [*Id.*]
[23] [*Id.*]
[24] [*Id.*]

Case No. 1:12-CV-01920
Gwin, J.

*C. The Aftermath*

Cleveland detectives, including Timothy Entenok and Nate Sowa, investigated that evening's events.[25] They recommended that Ware should be charged with felonious assault under Ohio Revised Code Chapter 2903.11, and with a failure to comply under Ohio Revised Code Chapter 2921.33(1)(B).[26] Thereafter, Detective Sowa presented the charges to the city prosecutor, and Detective Entenok presented the charges to the Cuyahoga County Grand Jury.[27] On December 20, 2010, prosecutors presented their case to a jury in the Cuyahoga County Court of Common Pleas.[28] The jury found Ware not guilty of felonious assault and guilty of failure to comply.[29] On June 8, 2012, Ware filed this case in the Cuyahoga County Court of Common Pleas.[30] Police officer Sanderson removed the case to this Court.[31]

On January 3, 2013, Defendant Sanderson filed a motion for summary judgment.[32] With the motion, Sanderson says that he is entitled to summary judgment because: (1) he is entitled to qualified immunity on Ware's § 1983 claims; (2) he is entitled to immunity under Ohio Revised Code § 2744 on Ware's state-law claims; (3) the Ohio Constitution does not provide a direct cause of action for Ware's state law claims for false arrest and excessive force; and (4) Ware's § 1983 claim for retaliation and Ohio law claim for malicious prosecution fail as a matter of law.[33]

---

[25] [Doc. 13-4 at 1.]
[26] [Doc. 13 at 11.]
[27] [Doc. 13-4 at 1.]
[28] [Doc. 13 at 11.]
[29] [*Id.* at 12.]
[30] [Doc. 1-2.]
[31] [Doc. 1-3.]
[32] [Doc. 13.]
[33] [Docs. 13; 15.]

Case No. 1:12-CV-01920
Gwin, J.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[34]

As the moving party, Sanderson has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of Ware's case.[35] "A fact is material if its resolution will affect the outcome of the lawsuit."[36] The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[37]

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue.[38] It is not sufficient for the non-moving party merely to show that there is some existence of doubt as to the material facts.[39] Nor can the non-moving party rely upon mere allegations or denials of its pleadings.[40] In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment."[41]

---

[34] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).
[35] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[36] *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004).
[37] *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).
[38] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[39] *See id.* at 586.
[40] Fed. R. Civ. P. 56(e).
[41] *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (internal quotation omitted).

Case No. 1:12-CV-01920
Gwin, J.

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party.[42] "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial."[43] Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[44]

### III. Analysis

*A. False Arrest and Excessive Force under the Ohio Constitution*

Sanderson says he is entitled to summary judgement on Ware's claims for false arrest and excessive force that Ware makes under the Ohio Constitution, Art. 1, § 10.[45] He argues that the Ohio Constitution does not provide a direct cause of action for these claims.[46] Sanderson is correct. The Ohio Constitution does not provide a private cause of action for false arrest or excessive force, nor does it provide a civil damages remedy.[47] Thus, the Court finds that Ware has failed to state a claim on which relief can be granted for these claims. Therefore, the Court grants Sanderson's motion for summary judgement on Ware's false arrest and excessive force claims under the Ohio Constitution.

---

[42] *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted).
[43] *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).
[44] *Martingale*, 361 F.3d at 301.
[45] [Doc. 13 at 20.]
[46] [*Id.*]
[47] *See e.g.*, *Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities*, 594 N.E.2d 959, 961 (1992); *PDU, Inc. v. City of Cleveland*, No. 81944, 2003 WL 21555157, at *3 (Eighth Dst. Ct. Appeals July 10, 2003).

Case No. 1:12-CV-01920
Gwin, J.

*B. Excessive Force under the United States Constitution*

As an initial matter, Ware's complaint contains an excessive force claim. Sanderson says that the Court should not read Ware's first claim for relief as an excessive force claim because it fails to mention the words "excessive force."[48] In paragraph ten of his complaint however, Ware says that "Officer Sanderson deployed deadly force without any reasonable suspicion of criminality and without threat of force."[49] Further, under the § 1983 caption in his complaint, Ware says "Paragraphs 1 through 10 are incorporated as if fully rewritten herein."[50] Thus, the Court finds that Ware's complaint contains a claim for excessive force.

Further, the Fourth Amendment reasonableness standard gives the proper standard to review Ware's excessive force claim. Sanderson incorrectly says the Court should review Ware's excessive force claim under a due process, "shock the conscience" standard because Sanderson did not "seize" Ware.[51] But Sanderson is wrong.

"*[A]ll* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its reasonableness' standard, rather than under a 'substantive due process' approach."[52] To constitute an arrest—"the quintessential seizure of the person under our Fourth Amendment jurisprudence—the mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the arrestee, [is] sufficient."[53] An "arrest," and thus a

---

[48] [Doc. 13 at 16.]
[49] [Doc. 1-2 at 2.]
[50] [*Id.*]
[51] [Doc. 13 at 16.]
[52] *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).
[53] *California v. Hodari D.*, 499 U.S. 621, 624 (1991).

Case No. 1:12-CV-01920
Gwin, J.

"seizure," requires "*either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority."[54]

Sanderson seized Ware when Sanderson shot him. Sanderson says that Ware was not seized within the Fourth Amendment because Ware did not submit to Sanderson's show of authority.[55] Under the Fourth Amendment however, a person is seized when the officer either (1) *exerts physical force* on the suspect or (2) the suspects submits to the officer's show of authority.[56] Here, it is undisputed that Sanderson exerted physical force on Ware when he shot him through the window of the Impala.[57] It is inconsequential to the Court's seizure analysis that Ware drove away after the shooting. Therefore, the Court finds that Sanderson arrested and seized Ware within the Fourth Amendment. Thus, the Fourth Amendment reasonableness standard is the appropriate standard for the Court to review Ware's excessive force claim.

*C. False Arrest under the United States Constitution*

Sanderson's only challenge to Ware's false arrest claim is that "Sanderson did not arrest Ware."[58] Because the Court finds that Sanderson arrested Ware when he shot him, the Court denies Sanderson's motion for summary judgement on Ware's § 1983 claim for false arrest.

*D. Qualified Immunity*

Sanderson is not entitled to qualified immunity for Ware's § 1983 claim for excessive force.

---

[54] *Id.* at 626 (emphasis in original).
[55] [Doc. 13 at 16.]
[56] *Hodari D.*, 499 U.S. at 624. *See also Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (holding that an officer "seized" the plaintiff when the officer shot him with beanbag propellant).
[57] [Docs. 13 at 10; 14 at 8.]
[58] [Doc. 13 at 16.] In his summary judgment brief and reply brief, Sanderson addresses Ware's false arrest claim twice: (1) "[i]t is undisputed that Sanderson did not arrest Ware;" [*id.*] and (2) "Plaintiff further fails to address the fact that Sanderson did not arrest Ware . . . . [Doc. 15 at 1.] Sanderson fails to address false arrest in his qualified immunity argument, instead focusing on excessive force. [Docs. 13 at 18-20; 15 at 1-6.]

-8-

Case No. 1:12-CV-01920
Gwin, J.

"Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[59] "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity."[60]

In determining whether a defendant is entitled to qualified immunity, the Court must employ a two-part analysis. The Court must determine (1) whether, while viewing the facts in the light most favorable to the plaintiff, a violation of a constitutional right occurred and (2) whether the constitutional right at issue was clearly established at the time of the defendant's conduct.[61] Courts have discretion, based on the circumstances of the case, to decide which of the two inquiries should be addressed first.[62]

i. Constitutional violation

Ware shows a genuine issue of material fact exists whether Sanderson's use of deadly force was reasonable. Specifically, Ware says that Sanderson's actions constituted excessive force in violation of the Fourth Amendment because Sanderson was not justified in shooting him.[63] In

---

[59] *Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[60] *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

[61] *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court overruled *Saucier* on other grounds in *Pearson v. Callahan*, 555 U.S. 223 (2009). When analyzing claims of qualified immunity, courts in the Sixth Circuit also sometimes use a three-step analysis. Under the tripartite approach, a court must also analyze whether "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). However, since this step was not noted by the Supreme Court in *Saucier* and *Pearson*, this inquiry is no longer mandatory. *Id.* at 311. Rather, the Sixth Circuit Court of Appeals has explained that step three is now merely a useful tool in certain cases in increasing the "clarity of the proper analysis." *Id.* In cases of alleged excessive force, the third step is wholly superfluous since a requirement of a violation is a finding of objectively unreasonable force. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). Thus, the Court will not separately analyze this third step of the analysis.

[62] *Pearson*, 555 U.S. at 235-236.

[63] [Doc. 14 at 19-20.]

-9-

Case No. 1:12-CV-01920
Gwin, J.

response, Sanderson says that his actions were reasonable and his use of deadly force was justified under the circumstances.[64]

Reviewing excessive force claims under the Fourth Amendment, courts apply the "objective reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight."[65] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation."[66] The inquiry is conducted objectively, based on the information actually possessed by the officer at the time he or she acted.[67]

In cases of deadly force, a court should look specifically to whether the officer had "probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others."[68] However, "only in rare instances may an officer seize a suspect by use of deadly force."[69]

Taking the evidence in the light most favorable to Ware, while also viewing it from the perspective of a reasonable officer in Sanderson's position, Ware's evidence creates a genuine issue of material fact as to whether Sanderson's use of deadly force was reasonable.

---

[64] [Doc. 13 at 19.]
[65] *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008).
[66] *Graham*, 490 U.S. at 396-97.
[67] *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Several factors are of particular relevance in assessing the reasonableness of an officer's use of force. These factors are: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the police officers or others, and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). However, these factors are not exhaustive and the ultimate question is whether the totality of the circumstances justified the seizure. *Ciminillo*, 434 F.3d at 466.
[68] *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 487 (6th Cir. 2007).
[69] *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir. 2005).

Case No. 1:12-CV-01920
Gwin, J.

It is not clear whether Ware moved the Impala *before or after* Sanderson fired his weapon.[70] It is also unclear whether Sanderson's position, before the shooting, made him vulnerable to a car strike.[71] If Ware moved the Impala before Sanderson fired his gun, and Ware's position made him vulnerable to a car strike, than Sanderson may have been justified in using deadly force. However, if Ware did not move the Impala before Sanderson fired his gun, or Sanderson's position did not leave him at risk from a car strike, then Sanderson's conduct is far less reasonable.[72] Thus, the Court concludes that a reasonable jury could find Sanderson's use of force objectively unreasonable if he shot Ware in the absence of an immediate threat.

Ware shows sufficient evidence to bring this material issue into question. For example, Ware cites to testimony from witnesses who say that Sanderson shot Ware before Ware moved the Impala.[73] In response, Sanderson cites to his own testimony and the testimony of Officer Alford to show that Ware moved the Impala before Sanderson fired his gun.[74] But Sanderson offers the improbable testimony that the vehicle pushed against Sanderson while Sanderson was positioned immediately adjacent to the driver's side door.[75] He never explains how the Impala moved sideways into him as Sanderson stood "posted [] standing along the A post, which is the front windshield post

---

[70] [Docs. 13 at 10; 14 at 8.]

[71] [*Id.*]

[72] *See, e.g.*, *Murray-Ruhl v. Passinault*, 246 F. App'x 338, 344 (6th Cir. 2007) (holding that the disputed issue of vehicle's dangerousness to officer precluded summary judgement on qualified immunity); *Smith v. Cupp*, 430 F.3d 766, 773 (6th Cir. 2005) (denying summary judgment on qualified immunity where disputed issue was whether officer shot plaintiff after the vehicle had passed the officer).

[73] Jerrell Starks said he saw Ware pull off "[a]fter the shot." [Doc. 14-2 at 4.] Delmont Blackmon replied "Yes" to the question, "Did you hear the gunshot and then hear the car take off?" [Doc. 14-3 at 3.] Ware says that "Sanderson shot me in the back before I caused the vehicle to move forward." [Doc. 14-7 at 1.]

[74] Sanderson says "I felt the car push me" before he fired his weapon. [Doc. 13-2 at 13.] Alford says the "vehicle veer[ed] towards the left toward my partner . . . then I heard a shot go off." [Doc. 13-3 at 13-14.] Sanderson correctly points out that Ware's witnesses may not have been able to see the encounter between Sanderson and Ware. [Doc. 15 at 6.] He also says that Nathan Barber provided conflicting testimony. [*Id.*] But issues of witness credibility are determinations for the jury. *See United States v. Latouf*, 132 F.3d 320, 330 (6th Cir. 1997).

[75] [Doc. 13-2 at 11].

Case No. 1:12-CV-01920
Gwin, J.

of the driver's side car."[76] Ware's evidence of conflicting statements raises an issue of material fact that should be resolved by the trier of fact.[77]

### ii. Clearly established right

Because Ware has established that a reasonable jury could find Sanderson's use of force objectively unreasonable, the Court must now determine if such a finding would indicate that Sanderson violated a clearly established constitutional right.[78] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[79] "In determining whether a reasonable officer would have known that his conduct was unlawful, [a] [c]ourt looks first to the precedents of the Supreme Court, then to case law from this circuit, and finally to decisions from other circuits."[80]

Ware had a clearly established right not to be subjected to deadly force unless he posed an immediate threat to the police officers or the public. The Sixth Circuit, following Supreme Court precedent, has held that a reasonable officer would understand that he is not entitled to shoot a person who does not pose an immediate threat.[81] Because Ware presents a conflicting version of facts that, if proven true, would establish that he did not pose an immediate threat, the Court finds

---

[76] [*Id.*]

[77] Other issues of material fact weigh against granting summary judgement for Sanderson. For example, the parties dispute Sanderson's position relative to the Impala. [Docs. 13 at 10; 14 at 8.] Thus, the parties dispute Sanderson's susceptibility to a car strike.

[78] *Pearson*, 555 U.S. at 235-236.

[79] *Saucier*, 533 U.S. at 202.

[80] *Humphrey v. Mabry*, 482 F.3d 840, 852 (6th Cir. 2007).

[81] *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991) ("At the time of the shooting it was clearly established in the Sixth Circuit that [the Plaintiff] had a right not to be shot unless he was perceived to pose a threat to the pursuing officers or to others."); *Garner*, 471 U.S. at 11; *Green v. Taylor*, 239 F. App'x 952, 960 (6th Cir. 2007) ("Garner clearly establishes the right at issue; that is, the right not to be shot unless the suspect poses an immediate threat to the officers or other.").

Case No. 1:12-CV-01920
Gwin, J.

that Sanderson is not entitled to summary judgment on the issue of qualified immunity.

*E. Retaliation and Malicious Prosecution*

Sanderson says that he is entitled to summary judgement on Ware's retaliation and malicious prosecution claims because Ware has failed to show that Sanderson initiated or prosecuted the criminal charges against Ware.[82]  Sanderson is correct.

"The essential elements of a malicious criminal prosecution [under Ohio law] are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the criminal defendant."[83]  To prove a claim for retaliation, a plaintiff must establish the following elements: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights."[84]

Here, Ware's claim for malicious prosecution fails as a matter of law because he has not shown that Sanderson instituted or continued Ware's criminal prosecution. In contrast, Sanderson has offered evidence that Cleveland detectives Timothy Entenok and Nate Sowa investigated that evening's events.[85]  According to Sanderson's evidence, Entenok and Sowa made the decision to pursue charges against Ware.[86]  Sowa presented the charges to the county prosecutor, and Entenok

---

[82] [Doc. 13 at 20.]
[83] *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 144, 559 N.E.2d 732 (1990).
[84] *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998).
[85] [Doc. 13-4 at 1.]
[86] [Doc. 13 at 11.]

Case No. 1:12-CV-01920
Gwin, J.

presented the charges to the grand jury.[87] Ware fails to show evidence to the contrary. Thus, because Entenok and Sowa initiated Ware's prosecution, the Court grants Sanderson's motion for summary judgment on Ware's malicious prosecution claim.

Similarly, Ware's retaliation claim fails because he fails to show any action by Sanderson that chilled protected activity by Ware. Plaintiff Ware says that filing this action against Sanderson is protected activity, and criminal charges were filed against him in retaliation.[88] But as discussed above, Ware has failed to offer evidence that Sanderson caused the county to file charges against him. Instead, the evidence shows that Entenok and Sowa made the decision to pursue charges against Ware.[89] Further, Entenok and Sowa presented the charges to the grand jury and county prosecutor.[90] Thus, because Ware does not show any adverse action by Sanderson, the Court grants Sanderson's motion for summary judgment on Ware's retaliation claim.

F. *Ohio Revised Code § 2744 Immunity*

Sanderson says that he is "immune from Ware's state-law claims" under Ohio Revised Code § 2744.[91] As discussed above, the Court has granted summary judgement to Sanderson on Ware's claims for false arrest and excessive force under the Ohio Constitution. In his complaint however, Ware claims excessive force and false arrest in violation of the Ohio Constitution and the "*laws and statutes* of Ohio."[92] While Ohio has failed to enact a cause of action for *excessive force* claims, it has provided a cause of action for *false arrest* claims under Ohio Revised Code § 2905.03.[93] Thus,

---

[87] [Doc. 13-4 at 1.]
[88] [Doc. 14 at 22.]
[89] [Doc. 13 at 11.]
[90] [Doc. 13 at 11.]
[91] [Doc. 13 at 22.]
[92] [Doc. 1-2 at 2.] (emphasis added). As discussed above, the Court granted summary judgement to Sanderson on Ware's claims for false arrest and excessive force under the Ohio Constitution.
[93] Ohio Rev. Code § 2905.03.

-14-

Case No. 1:12-CV-01920
Gwin, J.

the Court must address § 2744 immunity for Ware's claim for false arrest under § 2905.03.

The Ohio Revised Code provides immunity from liability to employees of political subdivisions.[94] Under Ohio law, where an employee's activities are connected to "governmental or proprietary function[s]," the employee is entitled to immunity unless: (1) the employee's acts were outside the scope of employment or official responsibilities; (2) the employee's acts were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) liability is expressly imposed elsewhere under the Ohio Revised Code.[95]

Ware says here that there is a genuine issue of material fact regarding whether Sanderson acted recklessly in arresting Ware.[96] Ohio courts have adopted the definition of "reckless" contained in the Second Restatement of Torts.[97] Under this definition, an actor's conduct is reckless where he "act[s] or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize . . . that his conduct creates an unreasonable risk of physical harm to another."[98] The Ohio Supreme Court has described reckless conduct as that which displays a "perverse disregard of a known risk."[99]

Here, a determination of whether Sanderson's decision to shoot Ware was reckless turns on facts that are disputed. Sanderson says that Ware "has not and cannot produce any evidence of willful, wanton, and reckless conduct necessary to establish" an exception to § 2744 immunity.[100] But Sanderson is wrong. A jury could find that Sanderson's arrest of Ware was reckless if it

---

[94] Ohio Rev. Code § 2744.03(A)(6).
[95] [*Id.*]
[96] [Doc. 14 at 24.]
[97] *Marchetti v. Kalish*, 559 N.E.2d 699, 700 (Ohio 1990).
[98] Restatement (Second) of Torts § 500 (2012).
[99] *O'Toole v. Denihan*, 889 N.E.2d 505, 517 (Ohio 2008).
[100] [Doc. 13 at 23.]

Case No. 1:12-CV-01920
Gwin, J.

concluded that Sanderson shot Ware when Ware did not pose a threat of serious harm to Sanderson. Ware has offered evidence that he moved the Impala *after* Sanderson shot him.[101] Moreover, the parties dispute Sanderson's vulnerability to a car strike.[102] Thus, because these issues of material fact are disputed, the Court denies Sanderson's motion for summary judgement on Ware's false arrest claim under § 2905.03.[103]

### IV. Conclusion

For the reasons above, the Court **DENIES IN PART** and **GRANTS IN PART** Sanderson's motion.

IT IS SO ORDERED.

Dated: February 13, 2013                              s/      *James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE

---

[101] *See supra* text accompanying note 73.
[102] *See supra* text accompanying note 75.
[103] *See, e.g.*, Reed v. City of Cleveland, 2007 WL 30286, at *7 (N.D. Ohio, Jan. 3, 2007) (denying sovereign immunity under Ohio law where material facts bearing on officer's recklessness were in dispute); Carpenter v. City of Cincinnati, 2003 WL 23415143, at *13-14 (S.D. Ohio, Apr. 17, 2003) (same).